UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ELIZABETH CALLAN,        §
       §
       Plaintiff,        §
VS.        §       CIVIL ACTION NO. 4:13-CV-247
       §
DEUTSCHE BANK TRUSTE COMPANY        §
AMERICAS,        §
       §
       Defendant.        §

## OPINION AND ORDER

Pending before the Court is Defendant Deutsche Bank National Trust Company Americas, as Trustee for the Certificateholders of Dover Mortgage Capital 2005-A Corporation, Grantor Trust Certificate Series 2005-A's ("Deutsche") Motion to Alter or Amend Judgment. Doc. 25. Having considered the motion and response, the facts in the record, and the applicable law, the Court concludes Defendant's motion should be granted.

## I.     Background

This is a foreclosure suit removed from state court, challenging a foreclosure action which Plaintiff Elizabeth Callan alleges is barred by the statute of limitations. In August 2004, Callan obtained a home equity loan (the "Loan") from Deutsche's predecessor in interest, Bank of America, which was secured by her property at 4818 Bayou Vista Drive, Houston, Texas 77091 ("the Property"). Original Pet., Doc. 1-3 ¶¶ 4, 11; Note, Doc. 12-1 at 10–12; Deed of Trust, Doc. 12-1 at 13–19. Plaintiff failed to remit her monthly payment due August 2006, and the Loan has been in arrears since that date. Doc. 1-3 ¶ 23; Notice of Default, Doc. 12-1 at 23.

On November 6, 2007, Deutsche sent Callan notice that it had elected to accelerate the maturity of the Loan. 2007 Notice of Acceleration, Doc. 12-1 at 25–26. Deutsche sent a second

formal notice of acceleration on July 8, 2008.  2008 Notice of Acceleration, Doc. 12-1 at 27–28. On July 24, 2008, Deutsche filed an application for foreclosure in the 295th District Court of Harris County, Texas, Cause No. 2008-44989.  Doc. 1-3 ¶ 12; Verified Tex. Rule Civ. P. 736 Appl. for Home Equity Foreclosure Order, Doc. 12-1 at 1–9.  For reasons not explained in the record, Deutsche filed a motion to dismiss the application which was granted on November 5, 2008.  Doc. 1-3 ¶ 18.

Deutsche filed a second application for foreclosure in the same court on February 4, 2009, Cause No. 2009-07482.  Doc. 1-3 ¶ 19.  The court granted the application on April 13, 2009, thereby giving Deutsche authority to foreclose the Property.  Again, for reasons that are not explained in the record, Defendant did not proceed with the foreclosure.  On August 2, 2010, Callan filed for Chapter 13 bankruptcy.  Doc. 11-1 ¶ 19.  The proceeding was dismissed two months and 16 days later on October 18, 2010.  *Id.*; Order of Dismissal, Doc. 6-4.

On November 3, 2011, Deutsche sent Callan a notice of rescission of acceleration of Loan maturity stating:

> Mortgagee under the Deed of Trust referenced below hereby rescinds the notice of acceleration dated December 17, 2008 and all prior notices of acceleration. Mortgagee further agrees that Borrower may continue to pay the indebtedness due Mortgagee pursuant to the terms of the debt secured by the Deed of Trust.

Notice of Rescission, Doc. 15-1.  On August 27, 2012, Defendant filed a third application for foreclosure, Cause No. 2012-49290, which was granted. Doc. 1-3 ¶ 21.

On January 2, 2013, Callan filed suit in Texas state court for a declaratory judgment that more than four years had elapsed since the Deutsche's cause of action accrued and that the lien and power of sale had expired.  *Id.* ¶ 10.  She also requested costs and attorney's fees under § 37.009 of the Texas Civil Practice and Remedies Code.  *Id.* ¶ 33–35.  Defendant timely removed the case to this Court on the basis of diversity jurisdiction.  Notice of Removal, Doc. 1.

On January 27, 2014, United States Magistrate Judge Frances Stacy issued a Memorandum and Recommendation (M&R) (Doc. 20) recommending Defendant's motion for summary judgment be granted and Plaintiff's motion for leave to file an amended complaint and cross-motion for summary judgment be denied.  Plaintiff filed objections to the M&R (Doc. 21) and Defendant filed a response thereto. Doc. 22.  On March 27, 2014, this Court declined to adopt the Magistrate Judge's M&R, granted Plaintiff's motion for leave to file an amendment complaint, denied Defendant's motion for summary judgment, and granted Plaintiff's cross-motion for summary judgment.  Doc. 23.

## II.    Legal Standard

"A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 419 (5th Cir. 2010) (internal citations omitted).

## III.   Applicable Law

The seminal case on abandonment of acceleration is *San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386 (Tex. 1901), in which the Texas Supreme Court held abandonment could be "inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations." *Id.* at 389. Sister courts have held "the conduct and declarations of the parties" (plural) include notices of rescission. *Clawson v. GMAC Mortg. LLC*, 3:12-CV-00212, 2013 WL 1948128, at *4 (S.D. Tex. May 9, 2013); *Rosas v. America's Servicing Company, et. al*, 5:12–cv–00819–FB, Doc. 23 at 7 (August 23, 2013); *DTND Sierra Investments LLC v. Bank of New York Mellon Trust Co., N.A.*, 958 F. Supp. 2d 738, 750 (W.D.

Tex. 2013), *appeal dismissed* (Dec. 20, 2013); *Leonard v. Ocwen Loan Servicing, LLC*, CIV.A. H-13-3019, 2014 WL 4161769, at *4, 6 (S.D. Tex. Aug. 19, 2014); *Gowing v. Seterus, Inc.*, 4:13-CV-2977, Doc. 29 at 1; Doc. 38, 2014 WL 4167498 at *2 (S.D. Tex. Aug. 20, 2014); *Boren v. U.S. Nat. Bank Ass'n*, CIV.A. H-13-2160, 2014 WL 5486100, at *1 (S.D. Tex. Oct. 29, 2014); *but see In re Rosas*, BR SA-13-05080, 2014 WL 5149418, at *7 (W.D. Tex. Oct. 14, 2014) (acknowledging this Court's Order (Doc. 23) but finding abandonment on other grounds).

Certain language in *Stewart* appears to prohibit unilateral abandonment by the lender. *Id.* at 388 ("It is not in the power of the creditor by his acts alone to change the rights of the parties resulting from the maturity of the debt."). The issue of unilateral abandonment, however, was not before the court. The court found abandonment based on the fact that the *debtor* "paid off at different times twenty-nine of the seventy-two notes . . . . *Both parties* acted in connection with the notes as though no default had taken place . . . ." *Id.* at 444 (emphasis added). The court nonetheless remanded for a factual determination of the issue,[1] noting that "mere delay in suing, or acceptance of partial payment of what is due, or *other act of the creditor*, alone will not take away his right to sue," whereas the plaintiff lender's acceptance[2] of partial payment on the basis of numerous "verbal promises" created a fact question. *Id.* at 447 (emphasis added). Of course, "mere acceptance" by the lender is necessarily accompanied by tender of payment, which was undisputed. Given actual tender, it is not clear whether the debtor's verbal promises to pay made any difference to the court in establishing the debtor's agreement to abandon. But a genuine fact question remained as to the *lender's* intent in regard to the continued payment, e.g. whether the lender intended to apply continued payments to the accelerated balance or to unaccelerated

---

[1] *Id.* At 389 ("That there was such an agreement or waiver as we have supposed is not definitely stated in the certificate, but evidence is recited which tends to show it.").
[2] "Payment was never refused by Stewart until just before the suit was instituted." *Id.* at 444. The court apparently meant to say payment by Stewart was never refused *by the lender*.

installments. The court concluded unilateral acts of the creditor, as well as inaction, do not sufficiently show the lender's intent to abandon acceleration, nor give the borrower adequate notice of intent to abandon.[3] Stressing the point, the court said the lender does not have the "power" to impliedly waive his express rights provided in the acceleration clause. Whether the lender has the power to abandon those rights expressly is another question, which was not under consideration by the court.

A more explicit reason *Stewart* does not reach unilateral abandonment is the particular acceleration clause at issue was automatic upon default, rather than optional as in subsequent cases and in Deutsche's loan and most contemporary loans. The court held, under an automatic clause, unilateral actions by the lender by himself are insufficient to show abandonment:

> When the proposition is established that the failure to pay an installment ipso facto gives rise to the cause of action upon the whole debt [i.e., under an automatic clause], it necessarily follows that mere delay in suing, or acceptance of part of what is due, or other act of the creditor, alone will not take away his right to sue, and, if that right continues, limitation runs against it.

The court acknowledged courts examining optional acceleration clauses reached opposite results:

> Authorities[4] holding that by acceptance of payment of overdue installments, or extension of time upon an installment, and other like acts, the creditor waives the default, are relied upon, but those are decisions in which the contract is regarded as only giving to the creditor the right of election.

---

[3] Courts in other jurisdictions have found "mere acceptance" insufficient to show the *lender's* intent to abandon, in cases where debtors are seeking to establish abandonment as a defense to foreclosure (rather than to refute abandonment in a statute of limitations defense as in the instant case). *See Paul Londe & Assoc., Inc. v. Rathert*, 522 S.W.2d 609, 610–11 (Mo. Ct. App. 1975) (cited by *F.D.I.C. v. Massingill*, 24 F.3d 768, 777 (5th Cir. 1994) as follows: "upon surveying states' case law and noting that some allow for waiver upon "mere acceptance of a payment," the court concludes that "in order to prove an implied waiver the acts or omissions of the party alleged to have waived his rights must be so consistent with and indicative of the intention to relinquish the particular right or benefit that no other reasonable explanation is possible"); *Arrowood Indem. Co. v. Gibson & Behman, P.C.*, 08 CIV. 6227 JCF, 2011 WL 1796045, at *3 (S.D.N.Y. Apr. 29, 2011) ("[M]ere acceptance of a partial payment of the accelerated debt by the previous holder of the subject note was not an affirmative act revoking the acceleration and thereby halting the running of the statute of limitations.") (quoting *UMLIC VP, LLC v. Mellace*, 19 A.D.3d 684, 799 N.Y.S.2d 61, 62 (App. Div. 2005)).

[4] The court does not provide citations. The relevant cases cited by counsel which are listed in the syllabus are from other jurisdictions.

*Id.* at 386. The preceding passages appear to exclude the issue of unilateral rescission under an optional acceleration clause from the scope of the opinion. The court goes on, however, in an oft-quoted but oblique passage, to make a general pronouncement against unilateral abandonment:

> It is not in the power of the creditor by his acts alone to change the rights of the parties resulting from the maturity of the debt. . . . But, aside from this, while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default. To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case. An agreement or waiver having the effect supposed may be inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations.

*Id.* at 388–89 (internal citations omitted). Some, but not all, courts have quoted this passage in reference to unilateral abandonment of optional acceleration. *Manes v. Bletsch*, 239 S.W. 307, 308 (Tex. Civ. App.—Austin 1922, no writ); *Diamond v. Hodges*, 58 S.W.2d 187, 188 (Tex. Civ. App.—Dallas 1933, no writ); *but see Cofer v. Beverly*, 184 S.W. 608, 610 (Tex. Civ. App.—Amarillo 1916, no writ) (passage applies only to automatic acceleration). Reading the opinion as a whole, the passage more likely refers only to automatic acceleration. The parties' "rights resulting from the maturity of the debt" are earlier described as arising only from automatic acceleration.[5] Optional acceleration "merely gives to the creditor a right of election" and

---

[5] The parties' rights include both the right of the lender to foreclose and the debtor's right "to pay all before the times agreed upon." Although the latter is central to the argument in the quoted passage, the court expressly refrains from holding the right exists and admits it creates difficulties that lead other courts to ignore the distinction between automatic and optional acceleration altogether:

> Most of the authorities [treating an automatic provision as an option] regard the provision as being in the nature of a penalty or forfeiture of which the party to whom it may accrue is not bound to take advantage. . . . [A] reason more difficult to meet is found in the stipulations in the contract itself. The debtor promises to make his payments in installments at stipulated times, and thereby gives to the creditor the benefit of an interest-bearing investment for the period agreed upon; and it may be said that this shows the intention of the parties that he should not have the right to violate this promise by breaking another,—to pay each installment at maturity,—and thereby secure the right to pay all before the times agreed upon; in other words, that the intention is apparent that he

"provid[es] contingencies upon the happening of which the debt is to mature." Prior to exercising the option, any purported right of the debtor resulting from the maturity of the debt does not exist. *Id.* at 388.

Notwithstanding the court's distinction between automatic and optional acceleration, lower court decisions citing *Stewart* have all involved optional acceleration. Most have found abandonment based on continued payment, without discussion of whether the debtor agreed. *See, e.g., Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566-67 (Tex. 2001) (citing *Pope* for the proposition that "[e]ven when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity"); *Cofer*, 184 S.W. at 611 ("[I]f the holder of the note *waived his right* to hasten the payment of the note, by entering into an agreement that the interest installment could be paid at a time subsequent to its due date, he and his assignee would be estopped from advancing the payment.") (emphasis added); *City Nat. Bank of Corpus Christi v. Pope*, 260 S.W. 903, 905 (Tex. Civ. App.—San Antonio 1924, no writ) (finding abandonment where lender "repeatedly accept[ed] partial payments"); *Diamond*, 58 S.W.2d at 188 ("An optional acceleration of maturity of a note can be waived by the acts and words *of one who holds*

---

should not have the right to mature the debt, because he has promised to do the things which would prevent it from maturing, and that hence it was contemplated that only the creditor should have such right.

The question now before us is one of limitation, and *we need not determine whether or not, under the view taken in this state, the debtor, by his willful default, could secure a right to pay the whole debt before he had agreed to pay it without the creditor's consent.*

*Id.* at 388–89 (emphasis added). The court, however, posits another "useful purpose" of automatic provisions for debtors which arguably justifies a prohibition against unilateral abandonment:

It might happen that the debtor, upon good grounds, would afterwards deny his liability upon the contract, and therefore refuse to pay installments, in which case the provision would serve him a useful purpose in bringing the question at issue to a prompt test, and not leave it entirely with the creditor to delay until perhaps evidence of the defense had been lost.

*Id.*

*right of election*, as was held by our Supreme Court in [*Stewart*].”); *Vaughan v. Crown Plumbing & Sewer Serv., Inc.*, 523 S.W.2d 72, 75 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (“An optional acceleration of maturity of a note can be waived by the acts and words of *one who holds right of election*, as was held by our Supreme Court in [*Stewart*].”) (emphasis added); *Woodrum v. Bradley*, B14-90-00071-CV, 1990 WL 151264, at *2 (Tex. App.—Houston [14th Dist.] Oct. 11, 1990, writ denied) (“By accepting late payments, [the lender] waived his right to accelerate the note, thus removing the bar of statute of limitations.”); *Lagou v. U.S. Bank Nat. Ass'n*, 01-13-00311-CV, 2013 WL 6415490, at *6 (Tex. App.—Houston [1st Dist.] Dec. 5, 2013, no pet.) (“The servicer's email and statement [regarding payments after default] do not rescind the earlier notice of acceleration. Because these statements do not refer to the earlier notice of acceleration, and no record evidence exists that U.S. Bank knew of, directed, or approved of either communication, we hold that the email and statement do not raise a fact issue about whether U.S. Bank had waived its right to accelerate.”).

On the other hand, four lower court decisions following *Stewart* have suggested unilateral abandonment is not permitted where the debtor objects or, alternatively, detrimentally relies on the notice of acceleration. *Manes*, 239 S.W. at 308; *Dallas Joint Stock Land Bank v. King*, 167 S.W.2d 245, 248 (Tex. Civ. App.—Fort Worth 1942, writ ref'd); *Denbina v. City of Hurst,* 516 S.W.2d 460, 463 (Tex. App.—Tyler 1974, no writ); *Swoboda v. Wilshire Credit Corp.*, 975 S.W.2d 770, 778 (Tex. App.—Corpus Christi 1998, pet. denied), *disapproved of by Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562 (Tex. 2001). Abandonment was found in all four cases. First, in *Manes v. Bletsch*, the court found abandonment based on an agreement to continue payment, noting:

> Appellant contends that, having already exercised his option, the same was irrevocable. This may be true as against the will of the payer, but, where the payer

is not objecting to the recall of such option, we can see no reason why the payee
could not revoke the same as well as not to have exercised it in the beginning.

239 S.W. 307, 308 (Tex. Civ. App. 1922). Similar to language in *Stewart*, this passage can be read to prohibit unilateral abandonment, yet the borrower's agreement to abandon was not in dispute since the borrower was the one who pled abandonment in order to obtain an injunction against foreclosure (rather than denying abandonment in response to a statute of limitations defense). In fact, the borrower did not even know the lender had accelerated; the parties' agreement to abandon was in fact a unilateral decision by the lender.[6] In this context, the statement that a borrower's objection "may" be "a reason" not to find acceleration, in the course of establishing the *lender's* intent to abandon, cannot be taken to mean lenders cannot unilaterally abandon acceleration.

Second, in *Dallas Joint Stock* (the first opinion to discuss abandonment as "rescission"), the court directly acknowledged a debtor's argument that joint action was necessary and that he had not agreed to rescission: "While the [debtor] insists that the evidence shows that he never agreed to the rescission or waiver . . ., [under *Stewart*] the waiver may be inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations." 167 S.W.2d at 248. Again, the court found no error as to the finding of the debtor's agreement. The court also quoted 34 American Jurisprudence 151: "It seems to be generally agreed that [optional acceleration] may be waived or rescinded." *Id.* at 247.

Third, in *Denbina*, the first case involving a unilateral rescission in the form of a nonsuit of a foreclosure claim, the court stated: "As we view the record, the City had a right to withdraw or revoke its option to accelerate payment, and effectively expressed its intent to do so by taking

---

[6] "[I]t is immaterial that appellee did not know that appellant had declared the remaining note to be due. Appellant knew such fact, and we think that his agreement not to exercise his option to declare the remaining note due is, in effect, to agree that, although it had become due by the exercise of his option, the same should be extended to the definite time fixed by the terms of the remaining note." *Id.* at 308.

a nonsuit." 516 S.W.2d at 463. The court acknowledged the debtor's argument that it had not agreed but found no evidence of "objection," citing *Manes*:

> Appellants contend that appellee having already exercised its option to accelerate, made the acceleration irrevocable. This may be true as against the will of the payor, but, where the payor makes no objection to the recall of the option, we see no reason why the City could not revoke the same as well as not to have exercised it in the beginning. *Manes v. Bletsch, supra.* There is nothing in the record indicating appellants made any objection to the recall brought about by the nonsuit prior to the time the judgment was rendered in the previous suit.

*Id.*

Finally, in *Swoboda*, the court found abandonment where debtors continued payment and "neither asserted nor presented any evidence that they relied on the acceleration, took any responsive action, or in any way changed their position as a result of the notice." 975 S.W.2d at 778. *Swoboda* cites *Denbina* for the following proposition: "Even if a creditor exercises the option to accelerate and makes a declaration to that effect, the election to accelerate can be revoked or withdrawn at any time, so long as the debtor has not detrimentally relied on the acceleration." *Id.* at 776–777. *Denbina*, however, does not refer to "detrimental reliance," a term *Swoboda* derives from two non-Texas cases. *Golden v. Ramapo Imp. Corp.*, 432 N.Y.S.2d 238, 241 (App. Div. 1980) (denying abandonment where debtor "failed to suggest, let alone demonstrate, any prejudice resulting from plaintiff's revocation of her election to accelerate" and therefore "cannot invoke the court's equitable powers to restrict plaintiff's desired remedy"); *In re Adu-Kofi*, 94 B.R. 14, 15 (Bankr. D.R.I. 1988) (denying abandonment where debtor failed to establish "they in any way changed their position, such as by obtaining other financing to pay off the mortgage, or by obligating themselves to sell the property."); *see In re Rosas*, 2014 WL 5149418, at *4 (noting the "cases *Swoboda* cites for the proposition do not apply Texas law. . . .

In addition, *Swoboda* states the detrimental reliance rule, but never applies it to the facts."). *In re Adu-Kofi* involved revocability of acceleration for purposes of prepayment penalties.[7]

A hundred years after *Stewart*, the Texas Supreme Court revisited the issue of abandonment in *Holy Cross Church of God in Christ*, 44 S.W.3d 562, 566–67 (Tex. 2001). In two paragraphs out of fifty, the court concluded there was no abandonment and the statute of limitations barred foreclosure of the debtor church. The court makes brief reference to the detrimental reliance standard but does not expressly adopt it:

> [T]he court of appeals noted, it "is undisputed that the Church did not pay the balance or any portion thereof, or resume making regular payments or in any way change its position." And [the lender] has not argued that [the former lender] or its successors had otherwise expressed an intent to abandon acceleration.

*Id.* at 570. Detrimental reliance was not asserted. The church "did not pay the balance or any portion thereof" or change its position in any way, so the lender failed to show even unilateral "mere acceptance" of payment.  In fact, there was "no evidence of abandonment" by either party, merely a failure to foreclose within the statutory period. *Id.* The court of appeals (which was reversed) had adopted detrimental reliance from *Swoboda*, which *Holy Cross* disapproved of as "nonsensical" for further requiring "affirmative actions" beyond notice to trigger acceleration. *Id.* On the contrary, in the last sentence of the passage above, *Holy Cross* suggests the lender may "otherwise express an intent to abandon" by unilateral rescission. The court summarizes the law of abandonment as follows:

> Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity. *City Nat'l Bank v. Pope*, 260

---

[7] Unlike statute of limitations cases such as the instant case, in prepayment penalty cases, the lender seeks a contractual penalty after the loan is paid off. Yet courts are still divided on the issue. *See Westmark Commercial Mortg. Fund IV v. Teenform Associates, L.P.*, 827 A.2d 1154, 1159 (N.J. App. Div. 2003) ("Courts across the country have divided on the question whether a prepayment premium may be properly imposed, however, when the prepayment is the result of the lender's accelerating the debt.").

S.W. 903, 905 (Tex. Civ. App.—San Antonio 1924, no writ); *see also San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388 (1901) (explaining that the parties' agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken"); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ) (explaining that an option to accelerate may be withdrawn or revoked after it is exercised by the noteholder, effectively restoring the note's original maturity date).

*Id.* at 567. The court cites *Denbina* for the proposition that acceleration may be revoked "by the noteholder," apparently unilaterally, omitting the requirement that "the payor makes no objection to the recall of the option." *Denbina*, 516 S.W.2d at 463 (quoted in *Swoboda*, 975 S.W.2d at 776–777).

Lower courts following *Holy Cross*, like those preceding, have generally found abandonment based on acceptance of payment, and the debtor's agreement has not been in dispute. *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (lender "accepted payment on the Note from [borrower] after acceleration without exacting any remedies available to it. . . . [Both parties] agreed, after the assignment of the Note to Khan, to treat the Note according to the Note's original terms."); *Santibanez v. Saxon Mortg. Inc.*, 11-10-00227-CV, 2012 WL 3639814 (Tex. App.—Eastland Aug. 23, 2012, no pet.) (same). One federal court ambiguously cited the borrower's agreement to pay as evidence of the *lender's* intent. *Anzaldua v. LLP Mortgage, Ltd.*, 7:03-cv-00098, Doc. 15 at 6 (S.D. Tex. April 23, 2003), *affirmed* 112 Fed. Appx. 371 (5th Cir. 2004) ("Because the [borrowers] signed an agreement which afforded them the opportunity to continue making payments, [the lender] took no remedial actions and expressed clear intent to abandon acceleration of the note.").

In summary, there is no Texas caselaw on the validity of unilateral notices of rescission of acceleration. In *Denbina*, the court examined unilateral rescission by nonsuit, citing *Manes* for the proposition that unilateral rescission may not be available against the will of the payor, but

found the debtor had unsurprisingly failed to object to the nonsuit. 516 S.W.2d at 463. In *Holy Cross*, however, the Texas Supreme Court cited *Denbina* for the proposition that rescission "by the noteholder" is available, omitting the "bilateral" language from *Manes*. 44 S.W.3d at 567. *Holy Cross* also acknowledged the lower court's citation of detrimental reliance language from *Swoboda*, but found it did not apply, noting the lender had not "otherwise expressed an intent to abandon acceleration," further suggesting the possibility of unilateral rescission. *Id.* at 567, 570. *Stewart*, *Dallas Joint Stock*, and *Swoboda* also include language suggesting unilateral rescission may not be available, but in each case the court found abandonment based on payment. 61 S.W. at 386; 167 S.W.2d at 248; 975 S.W.2d at 778. In the only case involving unilateral abandonment, *Denbina*, the court found abandonment because the borrower did not object. 516 S.W.2d at 463. Thus, Texas caselaw contains a few sentences suggesting unilateral rescission is not available, taken out of context or from other jurisdictions and found inapplicable to the facts at hand.

Several federal courts have upheld notices of rescission under Texas law. In *Clawson*, the court found abandonment based on a notice of rescission that stated the debtor had "requested an opportunity to fully cure the defaults." 2013 WL 1948128, at *1. The debtor, however, disputed that she had made such a request. *Id.* The court concluded "More recent cases make clear that *Stewart* does not preclude a note holder from abandoning acceleration without express agreement from the borrower." *Id.* at *4 (citing *Holy Cross*, *Santibanez*, *Khan*, and *Denbina*); *see also Factor v. JPMorgan Chase Bank, N.A.*, 3:13-CV-266, 2014 WL 3735569, at *2-3 (S.D. Tex. July 28, 2014) (same judge); *DTND Sierra Investments*, 958 F. Supp. 2d at 750; *Rosas*, 5:12–cv–00819–FB, Doc. 23 at 7 (citing *Clawson*); *Gowing*, 4:13-CV-2977, Doc. 29 at 1; Doc. 38, 2014 WL 4167498, at *2 (holding notice of rescission bars statute of limitations without discussion).

Other federal courts have found unilateral abandonment on the basis of documents sent by the lender other than formal notices of rescission. *Leonard*, 2014 WL 4161769, at *4, 6 (lender sent "multiple documents communicating that only a portion of the debt was due and that acceleration of the full debt had been abandoned," including "account statements . . . requesting less than the full balance and . . . a second intent to accelerate letter."); *Boren*, 2014 WL 5486100, at *1 (lender sent "new notice of default that did not request the accelerated balance" but "nothing officially stating [lender] was rescinding the acceleration").

In general, Texas law allows rescission or waiver of claims by written notice or other evidence of intent. *See* Tex. Bus. & Com. Code Ann. § 2A.107 ("A claim or right arising out of an alleged default or breach of warranty may be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party."); *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex. 1967) (defining waiver as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it."). The elements of waiver are "(1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *G.H. Bass & Company v. Dalsan Properties–Abilene,* 885 S.W.2d 572, 577 (Tex.App.—Dallas 1994, no writ). Waiver is "essentially unilateral in its character. It need not be founded upon a new agreement or be supported by consideration, nor is it essential that it be based upon an estoppel." *Massachusetts Bonding*, 416 S.W.2d at 401.

Other jurisdictions generally allow rescission of acceleration. *See Dallas Joint Stock*, 167 S.W.2d at 247 (quoting 34 American Jurisprudence 151) ("It seems to be generally agreed that an election, pursuant to an optional acceleration provision in a promissory note to declare the

note due upon some default of the promissor, when once made, may be waived or rescinded.”); *see also* 11 Am. Jur. 2d Bills and Notes § 170[8]; *F.D.I.C. v. Massingill*, 24 F.3d 768, 777 (5th Cir. 1994) (citing 11 Am. Jur. 2d § 296[9]); 57 Causes of Action 2d 587 (2013) (“A creditor may always choose to revoke or withdraw operation [of] the acceleration clause.”); Restatement (Third) of Property (Mortgages) § 8.1 (1997), cmt. e (“[U]nder Subsection (d)(2), a court may relieve a mortgagor from the consequences of acceleration and permit reinstatement of the mortgage by payment of arrearages where it determines that the *mortgagee waived its right* to accelerate.”) (emphasis added). A few state supreme courts have said rescission is only available where there is no detrimental reliance. *Mitchell v. Fed. Land Bank of St. Louis*, S.W.2d 671, 676-77 (Ark. 1943) (“The right to accelerate the indebtedness is exercised by the unilateral act of the creditor; and likewise, the right to waive the acceleration may be exercised by the unilateral act of the creditor, in the absence of any claim or showing that the debtor has changed position because of the acceleration.”); *Slottow v. Hull Inv. Co.*, 129 So. 577, 582 (Fla. 1930) (lender “was entitled to waive its former election, receive the past-due interest, and dismiss the foreclosure, it not being shown that the mortgagor was relying upon the election, nor had changed his position by reason thereof, and nothing being done to alter the terms of the original obligation, nor any security relinquished”); *W. Portland Dev. Co. v. Ward Cook, Inc.*, 246 Or. 67, 71, 424 P.2d 212, 214 (1967) (“In the present case there is no evidence that plaintiff changed its position or acted to its prejudice after defendant gave notice of acceleration and before it

---

[8] “The exercise of an option to accelerate is not irrevocable, and the holder of a note who has exercised the option of considering the whole amount due may subsequently waive this right and permit the obligation to continue in force under its original terms for all purposes. *The waiver may be express*, since a claim or right arising out of an alleged default or breach may be discharged, in whole or in part, without consideration by the aggrieved party in a signed record.” (Emphasis added.)

[9] “Exercise of the option to accelerate is not irrevocable, and the holder of a note who has exercised his option of considering the whole amount due may subsequently waive this right and permit the obligation to continue in force under its original terms for all purposes, including the determination of when the statute of limitations begins to run on the right to sue.”

rescinded the same."). None of these courts actually found detrimental reliance by the borrower, who had benefited from his default. An exception is *Kilpatrick v. Germania Life Ins. Co.*, 75 N.E. 1124 (N.Y. 1905) (denying abandonment where debtor "had changed his position, had obligated himself to make a new loan on the mortgaged premises, and necessarily had contracted financial obligations in that connection"). Like *In re Adu-Kofi*, this case involved prepayment rather than the statute of limitations, and the borrower had tendered the accelerated amount but refused to pay a penalty.[10]

Other courts, in contrast, have taken for granted the lender's right to rescind unilaterally, while addressing the issue of implied abandonment in the absence of an express notice of rescission. *Paul Londe & Associates, Inc. v. Rathert*, 522 S.W.2d 609, 611 (Mo. Ct. App. 1975) ("Where, as here, no express waiver is shown, in order to prove an implied waiver the acts or omissions of the party alleged to have waived his rights must be so consistent with and indicative of the intention to relinquish the particular right or benefit that no other reasonable explanation is possible."); *Driessen-Rieke v. Steckman*, 409 N.W.2d 50, 52 (Minn. Ct. App. 1987) ("The question here, however, is not whether appellants had the right to waive their option to accelerate once it was exercised. Clearly they had such a right. The question, rather, is whether appellants actually waived their option . . . ."); *Cadle Co. II, Inc. v. Fountain*, 281 P.3d 1158 (Nev. 2009) ("Because an affirmative act is necessary to accelerate a mortgage, the same is needed to decelerate. Accordingly, a deceleration, when appropriate, must be clearly communicated by the lender/holder of the note to the obligor."); *Van Vlissingen v. Lenz*, 49 N.E. 422, 423-24 (Ill. 1897) (lender may "upon such default having been removed, or for any other reason satisfactory to himself, waive his election, and permit the contract of indebtedness to continue under its original terms. Such being the law, therefore, it became in this case solely a question of fact

---

[10] *See* note 7, *supra*.

[whether the lender] upon the acceptance by him of the interest due, waived his notice of election.).

One way lenders have sought to show abandonment in the absence of express notice is dismissal of an initial application for foreclosure, either voluntary (as in *Denbina*) or involuntary for want of prosecution (or involuntary abatement, as in *Murphy*).[11] A large number of cases involving such dismissals have arisen in Florida, as the statute of limitations expires on foreclosures from the 2007 mortgage crisis.[12] The question whether dismissal for want of prosecution resets the statute of limitations is currently before the Florida Supreme Court, certified by a lower court as a "matter of great public importance." *United States Bank Ass'n v. Bartram*, 140 So. 3d 1007, 1014 (Fla. 5th DCA April 25, 2014), *review granted*, SC14-1265, 2014 WL 4662078 (Fla. Sept. 11, 2014). Lower Florida courts have generally held dismissal constitutes abandonment. *See, e.g., Dorta v. Wilmington Trust National Ass'n*, 2014 WL 1152917, slip op. at *5 (M.D. Fla. 2014) (involuntary dismissal for want of prosecution); *Kaan v. Wells Fargo Bank, N.A.*, 981 F.Supp.2d 1271, 1273–74 (S.D. Fla. 2013) (voluntary dismissal). Courts have also found dismissals do not bar subsequent foreclosure actions for continuing defaults under the doctrine of res judicata, as in *Denbina*. *Singleton v. Greymar Associates*, 882 So. 2d 1004 (Fla. 2004); *Johnson v. Samson Const. Corp.*, 704 A.2d 866 (Me. 1997); *U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E.2d 987 (Ohio 2008); *Fairbank's Capital Corp. v. Milligan*, 234

---

[11] *See* Andrew J. Bernhard, *Deceleration: Restarting the Expired Statute of Limitations in Mortgage Foreclosures*, Fla. B.J. 30, 36 (2014) ("If something more than a mere dismissal is required to decelerate, the lenders are in trouble. It is not the regular practice of lenders to deliver independent notices of deceleration, to collect on individual installments or send monthly invoices after voluntary dismissal of an initial foreclosure action, or to send second notices of intent to accelerate. Further, lenders do not regularly allege deceleration or subsequent default in their second foreclosure complaints, as their foreclosure firms simply reuse their standard complaint forms.")

[12] *Id.* at 30 ("As Florida courts struggled to process the swelling foreclosure actions, so too did lenders and their foreclosure firms, leading to mass misfilings, the David J. Stern and Ben Ezra Katz law firm implosions, rocket dockets and mobbed for-want-of-prosecution calendars, and the robo-signing pandemic. In reaction, many lenders voluntarily dismissed up to thousands of foreclosure actions, thinking it better to collect their original loan documents and refile another day. Likewise, the courts involuntarily dismissed innumerable foreclosure actions to clear their overcrowded dockets.").

Fed. Appx. 21 (3d Cir. 2007). Implicit in these decisions is the notion that a debtor in continuing default is not entitled to limitations on actions, while the lender is entitled to protect his continuing right to foreclose by affirmative acts or express notice. *See* Andrew J. Bernhard, *Deceleration: Restarting the Expired Statute of Limitations in Mortgage Foreclosures*, Fla. B.J. 30, 37 (2014) ("It remains to be seen whether Florida courts will . . . demand evidence of deceleration from lenders. Lenders may change their practices . . . by affirmatively alleging deceleration and secondary default within the limitations period or sending notice of deceleration.").

## IV.   Discussion

The parties agree the loan was accelerated on November 6, 2007, resulting in a four year limitations period ending November 6, 2011.[13] Deutsche argues the running of the statute was reset on November 3, 2011 by a notice of rescission (Doc. 15-1) resulting in a limitations period ending November 3, 2015. According to decisions by sister courts and the general right of an aggrieved party to waive default under Texas law, Deutsche was entitled to rescind, and its third application for foreclosure dated August 27, 2012 was not time-barred. Doc. 12-2.

Under the facts of this case, it is not necessary to resolve the issue of the validity of notices of rescission under Texas law. According to the "no-objection" rule suggested by *Manes* and *Denbina*, a note holder cannot unilaterally rescind acceleration over the objection of the debtor,[14] but Callan has failed to show she objected to the notice of rescission.  Callan has argued that she objects by filing this suit. The *Denbina* court, however, upheld rescission (by way of a nonsuit of a counterclaim for acceleration, rather than by a notice of rescission) where there was

---

[13] The limitations period is further extended two months and 16 days as a result of Callan's bankruptcy proceeding, expiring January 22, 2012. Deutsche's foreclosure application on August 27, 2012 still falls outside the limitations period. 11 U.S.C. § 362.
[14] The Court acknowledges Texas law on this issue is unresolved.

"nothing in the record indicating appellants made any objection to the recall brought about by the non-suit prior to the time the judgment was rendered" in favor of the borrower, at which point the borrower sought to bar a second action under *res judicata*. 516 S.W.2d at 463. Aside from the different facts and law applied in *Denbina*, it is not clear if a borrower could "object" outside of such a proceeding, and if so, at what point the objection becomes timely. Under *Denbina*, such an objection in the instant case would not be available as a limitations defense to a subsequent foreclosure action against a property owner.

According to the detrimental reliance standard suggested by *Swoboda* and restated in the Order under consideration ("[A] noteholder cannot unilaterally rescind acceleration . . . where the debtor has detrimentally relied on the acceleration."), Callan has failed to show she detrimentally relied on acceleration of her loan. 975 S.W.2d at 776–777; Doc. 24 at 11. She argues that she filed for bankruptcy as a result of acceleration, and her bankruptcy schedule shows $96,000 out of the total $101,520 was to be paid on the loan, in addition to $2,810 attorney fees that were incurred to her detriment. Docs. 6-2 at 8; 6-3 at 12. She apparently spent the principal loan amount of $162,000. Doc. 12-1 at 10. Mere filing for bankruptcy, however, was not considered detrimental reliance in the cases from which the rule is derived. *Swoboda*, 975 S.W.2d at 770; *In Re Adu-Kofi*, 94 B.R. at 15 (debtor failed to show "during the time in question [in bankruptcy proceeding], they in any way changed their position, such as by obtaining other financing to pay off the mortgage, or by obligating themselves to sell the property"); *see also Kilpatrick*, 75 N.E. at 1124 (debtor showed he changed position because he "obligated himself to make a new loan on the mortgaged premises, and necessarily had contracted financial obligations in that connection").

It is undisputed Callan is in default, and there is no evidentiary concern which might justify limitations. *See Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977) ("The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds."). Callan has been residing at the property subject to foreclosure since 2006. Deutsche now has to file another application for foreclosure, further extending Callan's beneficial use of the property. Although Deutsche does not explain why it chose not to proceed with foreclosure in 2008 and 2009, lenders are hesitant to foreclose on a homestead and there is no basis for courts to disallow them from rescinding such a drastic course of action. Deutsche's ability to rescind presumably allowed it to prioritize other matters and postpone foreclosure to the benefit of both parties.

## V.    Conclusion

Accordingly, it is hereby

**ORDERED** that Defendant Deutsche Bank National Trust Company America's Motion to Alter or Amend Judgment (Doc. 25) is **GRANTED**.

An Amended Final Judgment will be entered by separate document.

SIGNED at Houston, Texas, this 21st day of March, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE